# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **ROBERT LANGENDORF**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16 C 8538 |
| | ) |
| **CITY OF CHICAGO**, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Robert Langendorf ("Langendorf") has brought this action against the City of Chicago ("City") and Serco Inc. ("Serco"), a company that contracts with the City to provide parking enforcement services, because he is peeved (quite understandably from his perspective) at having received multiple citations for what he views as a single parking violation -- a peeve that was exacerbated (this time understandably from anyone's perspective) when the City, after Langendorf had already paid all of the tickets in full, proceeded to continue "collection" efforts, threaten him with penalties and sanctions (!) and actually boot his car!!  In response the City has moved to dismiss Langendorf's Complaint for its asserted failure to state a viable claim.  Because of the extraordinary shabbiness of the actions to which Langendorf has been subjected, particularly after he had paid the disputed tickets in full, this opinion explains why a federal court cannot provide him relief for all of his grievances, although the City's motion must be denied because a portion of his claims withstands disposition at this threshold stage of the case.

**Background**

Langendorf's Complaint[1] states that he received three parking tickets within a 36 hour period for conduct that he acknowledges constitutes a violation of Chicago Municipal Code § 9-76-160(f),[2] which prohibits drivers from parking within the city limits if their vehicles do not display proper registration for the current period. While parked at 869 West Lill Avenue in Chicago on September 1 and 2, 2014,[3] Langendorf's car received three tickets, first at 12:11 p.m. and later at 7:49 p.m. on September 1, then at 11:23 p.m. on September 2 (¶¶ 13 through 16). Each ticket carried a $60 fine (¶ 18). On December 3 the City issued a Notice of Default Determination ("Notice") for the first ticket, and on December 17 it issued Notices for tickets two and three (¶ 19). Langendorf says he paid the first ticket in full on December 19 (¶ 20). Less than two weeks later, on January 1, the City issued a Notice imposing an additional $60 penalty for late payment of the first ticket (¶ 21), and 15 days later the City issued Notices imposing like penalties for the second and third tickets, thus seeking a total payment of $360 for all three tickets (¶ 22). Then on January 22 the City issued a vehicle seizure notice for unpaid violations (¶ 23). On January 27 Langendorf paid the entire amount sought by the City, including the penalties (¶ 24).

Despite having received payment in full, the City issued a collection notice on February 15, again seeking payment of $120 for each of the three tickets (a new total of $360)

---

[1] Citations to paragraphs of the Complaint simply take the form "¶ --."

[2] Further citations to that Code will take the form "Code § --," omitting the initial number "9," while future citations to the Illinois Administrative Law, found at 735 ILCS 5/3, will take the form "Act § --," omitting the prefatory "735 ILCS 5/3."

[3] All dates referred to here bridged the period between September 2014 and June 2015, so that the omission of year references in this opinion cannot cause any confusion.

(¶ 25). As of March 27 the City's website reflected that all three tickets had been paid (¶ 26-27),[4] but it continued its "collection" (really extortion?) efforts and threatened Langendorf with additional penalties (¶ 28). On March 27 Langendorf's car was booted, depriving him of its use for a "considerable time" (¶¶ 29, 30). Then on June 9 the City Law Department got into the act, sending Langendorf a collection letter that sought payment of already-paid tickets two and three and that warned the "City may garnish your wages and bank accounts, file a lien against your property, and notify the credit bureaus, any of which may affect your credit" (¶ 31).

Langendorf asserts that he had no forum in which he could challenge the imposition of late fees, booting and continued collection threats, because the time to contest the tickets had expired (¶ 32). And to boot[5] he adds that the City has a pattern and practice of issuing repeat citations for a single ordinance violation, imposing penalties and continuing collection efforts after the underlying fines have been paid in full (¶¶ 34, 35).

## **Legal Standards**

Under Rule 12(b)(6) a party may move for dismissal for the "failure to state a claim upon which relief can be granted." Familiar Rule 12(b)(6) principles require the District Court to accept as true all of Langendorf's well-pleaded factual allegations and to view those allegations

---

[4] City's website entries are exceedingly ironic in light of the ensuing conduct on its part and that of its Law Department:

> 26. As of March 27, 2015, the City's official website reflected that all three tickets had been paid.
>
> 27. On April 1, 2015, the City's official website stated, for each of the three tickets, "Thank you for your payment. No further action is required for this ticket."

[5] Bad pun intended.

in the light most reasonably favorable to him as the nonmovant (Lavalais v. Vill. of Melrose Park, 734 F.3d 629, 632 (7th Cir. 2013)). But "legal conclusions or conclusory allegations that merely recite a claim's elements" are not entitled to any presumption of truth (Munson v. Gaetz, 673 F.3d 630, 632 (7th Cir. 2012)).

In the past decade the Supreme Court made an important change in the evaluation of Rule 12(b)(6) motions via what this Court regularly refers to as the "Twombly-Iqbal canon," a usage drawn from Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), as more finely tuned in Erickson v. Pardus, 551 U.S. 89 (2007) (per curiam), and Ashcroft v. Iqbal, 556 U.S. 662 (2009)). That canon has introduced the concept of "plausibility" into the analysis, and in that respect our Court of Appeals has "interpreted Twombly and Iqbal to require the plaintiff to provid[e] some specific facts to support the legal claims asserted in the complaint" (McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation marks omitted)). As McCauley, id. went on to reconfirm, claimants "must give enough details about the subject-matter of the case to present a story that holds together."

Because the focus of Rule 12(b)(6) motions is on the pleadings, they "can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice" (Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). But a nonmovant has more flexibility, for it "may elaborate on [its] factual allegations so long as the new elaborations are consistent with the pleadings" (id.).

## **Procedural Due Process**

Procedural due process imposes constraints on government actions that deprive individuals of liberty or property interests (Mathews v. Eldridge, 424 U.S. 319, 332 (1976).

Mathews, id. at 335 teaches that determining the minimum procedure for a given deprivation requires consideration of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Here the Complaint details how Chicago's parking enforcement deprived Langendorf of his property. This opinion's analysis therefore turns to whether the procedures decreed by the Chicago Municipal Code ("Code") and the Illinois Administrative Review Law ("Act") provided Langendorf with sufficient procedural safeguards in light of the private and governmental interests at stake.

To state a procedural due process claim, a plaintiff must point to a specific shortcoming in the procedures that caused an unlawful deprivation, not simply to the mistaken or unauthorized conduct of those administering the policies (Leavell v. Illinois Dep't of Natural Resources, 600 F.3d 798, 804-05 (7th Cir. 2010). Specific shortcomings can be demonstrated by showing, for example, that a procedure lacks adequate safeguards or a post-deprivation remedy to prevent a mistake or unauthorized conduct (id. at 805-06). Or, when a plaintiff suffers an erroneous deprivation, he or she may also point to procedures that afford government employees a level of discretion such that their wrongful actions can be considered "authorized" by the governmental employer (id. at 806).

Just as important, to bring a federal lawsuit challenging the constitutional sufficiency of certain procedures a plaintiff must have actually availed himself or herself of those procedures.

Zinermon v. Burch, 494 U.S. 113, 126 (1990) teaches that in the context of due process, a failure to exhaust remedies is fatal to the claim:

> The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.

Langendorf contends that the City does not provide constitutionally sufficient process for challenging late fees that are wrongfully levied on tickets. But his claim fails for two reasons. First, the Code and the Act do codify procedures for challenging all tickets, fines and fees (1) both at the administrative level and in the state courts and (2) both before and after a respondent's fines and fees become due. Second, Langendorf did not avail himself of those procedures.

As a preliminary matter, Van Harken v. City of Chicago, 103 F.3d 1346 (7th Cir. 1997) held that in general the civil procedural safeguards that the City provides to parking violation respondents are constitutionally sufficient.[6] But because Van Harken does not specifically address the paths that were available to Langendorf to deal with the problems with the City about which he complains, they will be summarized below.

When a ticket is issued, the respondent has seven days to either pay the fine or request an administrative hearing (Code § 100-050(a)). If a hearing is not requested and the ticket is not

---

[6] Van Harken, 103 F.3d at 1353 conceded that it was unimpressed with a parking ticket respondent's appellate remedy, which at the time "costs more to file than the maximum gain that the appeal can yield," but the Court of Appeals did not hold that the subpar nature of the appellate remedy rendered the City's parking violation procedures constitutionally deficient. Today, however, the filing fee for a case claiming damages that do not exceed $250 is $150, while the fee for a case claiming between $250 and $1000 is $203 (705 ILCS 105/27.2a). Under the circumstances of this case, in which Langendorf would have to resort to the law to protect himself from a plainly groundless and unlawful threat by the City, the implications from Van Herken must be kept in mind in the discussion that follows.

paid, the City issues a second notice of violation (Code § 100-050(d)(1)). If the respondent does not respond to that second notice by paying the fine or requesting a hearing within 14 days, the City then enters a determination of liability in the amount of the fine listed on the second notice (id.). If the fine is not paid within 25 days of the determination of liability, the respondent is automatically subject to penalties for late payment "equal to the amount of the fine for the relevant violation" (Code § 100-050(e)). Here Langendorf does not assert in his Complaint that he requested a hearing to contest his first or second notice of violation for any of his three tickets.

Once a determination of liability is issued, the determination becomes final for purposes of judicial review in the state Circuit Court under the Act, either on the finding an administrative law officer (a lawyer, not a judge -- see Van Harken, 103 F.3d at 1350) or on the expiration of 21 days to file a petition to set aside the determination (Code § 100-090(a), (b), (c)). Administrative review can be commenced by "the filing of a complaint and the issuance of a summons within 35 days from the date that a copy of the decision of the decision sought to be reviewed was served upon the party affected by the decision" (Act § 103). Langendorf claims in this action that he was wrongfully issued a determination of liability and late fee for his first ticket and that he paid his second and third tickets, including late fees, 12 days after the City entered its final determination as to those tickets (¶¶ 22, 24). But he does not state that he filed for administrative review of any of those notices, which he had the right to do under the Act.

Langendorf asserts that even after he paid his tickets the City issued him a vehicle seizure notice (¶ 22). For that too the Code and state law provide an avenue of relief that Langendorf did not pursue. In the event that an owner of a vehicle accumulates three or more final determinations of liability, the City will send a notice of impending immobilization pursuant to

Code § 100-120 (b), and Langendorf confirms that he received such a notice on January 22 (¶ 23). Next an owner has 21 days to challenge the validity of the notice by requesting a hearing and submitting documentary evidence that would disprove liability (Code § 100-120(b)). That evidence can be based, among other things, on the ground that all fines and penalties for the citations have been paid in full (id. § 100-120(b)(1)). Rather than challenge the vehicle immobilization notice pursuant to that section, Langendorf paid the tickets and late fees "under protest" on January 27 (¶¶ 24, 33).

After he had paid the fines and fees in full, the City nonetheless booted his car on March 27 (¶ 29). When a vehicle is thus immobilized the City must affix a notice to the vehicle that states how the owner may obtain an immobilization hearing (Code § 100-120(c)). So Langendorf could have requested a hearing to contest the immobilization of his vehicle within 21 days (id. § 100-120(e)), but again he failed to avail himself of that opportunity. In that respect a successful hearing could have spared him the application of the extensive costs associated with the immobilization (see id. 100-120(d)) as well as the purported collection costs and attorney's fees that had allegedly remained (but were not in fact) outstanding on the final determinations for each ticket (id. § 100-120(d)), but neither that hearing nor any other procedure devised by the City would have spared him the financial and other harms that he sustained in consequence of the City's and its lawyers' unlawful collection efforts and threats, which had continued up to that point despite his already having paid the tickets and late fees in full.

In reviewing an agency decision the Circuit Court has the power to stay the administrative decision, affirm or reverse the decision in whole or in part, or reverse and remand if the agency has held a hearing (Act §§ 111(a)(5), (6)). Final decisions of the Circuit Court in actions to review an administrative decision are reviewable by appeal just as any other civil case

(Act § 112). Thus if Langendorf's rights prescribed by the Code were not vindicated at the Circuit Court level, he could have appealed the decision all the way up to the Illinois Supreme Court and possibly even to the United States Supreme Court.

But the difficulty with all of this is that the procedural paths just described require the investment of a good deal of time and money -- and though it may not be overly troubling to require someone to take such steps as the result of a self-inflicted wound (the violations of a quite reasonable ordinance on successive days), the City has really not come forward with a showing that the procedures -- and more importantly the remedies -- available to Langendorf comport with procedural due process as to the aspect of his case that challenges the City's conduct after he had paid all of the tickets, including penalties, and the City and its Law Department had nevertheless continued to hound him in an appalling manner though fully aware of such full payment (see n.4).

Indeed, nothing in the Code (and hence nothing in the Act, which is derivative of the Code in procedural terms) provides any real process to provide relief from the City's (and its lawyers') outlaw activity. So in the absence of access to a judicial proceeding such as this one, in a real world sense Langendorf will not only have been deprived of due process -- he will be deprived of any process at all.

Hence the City's motion cannot be granted, and because this action is only at the incipient pleading stage the Complaint will be kept intact until further proceedings make clear whether other aspects of Langendorf's claim may be entertained in conjunction with the portion that has been dealt with here. That said, this opinion turns to other issues posed by the parties to see whether any other roadblocks would stand in the way of a judgment in the City's favor on those other aspects.

As stated at the outset of the <u>Background</u> section, Langendorf received three tickets over a 36 hour period, each at a time when he was parked in the same parking space, for his having failed to comply with the City ordinance that requires every car parked within its limits to display proper and current registration.[7] Pointing to Code § 100-030(b), which provides for issuance of a ticket "whenever any vehicle exhibits a compliance violation," the City contends that each issuance was lawful (C. Mem. 4).[8] Langendorf urges that the Code provision is unconstitutionally vague because it "clearly causes the type of arbitrary and discriminatory enforcement" that caused him to receive three successive tickets for what he views as the same violation (L. Resp. Mem. 9-10).

Laws are impermissibly vague if they fail to "provide a person of ordinary intelligence fair notice of what is prohibited" (<u>United States v. Williams</u>, 553 U.S. 285, 304 (2008)). <u>FCC v. Fox Television Stations, Inc.</u>, 132 S. Ct. 2307, 2309 (2012) addresses not one but two due process concerns: "[r]egulated parties should know what is required of them so they may act accordingly" and "precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." But due process "does not demand perfect clarity and precise guidance" (<u>Hegwood v. City of Eau Claire</u>, 676 F.3d 600, 603 (7th Cir. 2012) (internal quotation marks omitted)), nor does due process require that terms be defined in a law or statute if their "ordinary meaning . . . clearly is understandable to a person of common intelligence"

---

[7] Though the record does not reflect whether the car occupied that space continuously during that time frame, or whether instead Langendorf had driven it away at some point and then returned it to the space, the legal analysis that follows in the text would arrive at the same destination in either event.

[8] Citations to the City's brief in support of its motion take the form ""C. Mem," while citations to Langendorf's responsive brief take the form "L. Resp. Mem. --."

(Discount Inn, Inc. v. City of Chicago, 72 F.Supp.3d 930, 937 (N.D. Ill. 2014), aff'd 803 F.3d 317 (7th Cir. 2014)).

As Langendorf would have it, the inclusion of the word "whenever" in Code § 100-030(b), which assertedly allowed officials to issue him three tickets in the span of 36 hours for the same infraction, allows parking enforcement personnel to determine arbitrarily how many tickets to write (L. Resp. Mem. 9-10). But under the standards set forth by the Supreme Court and our Court of Appeals, Langendorf's claim that Code § 100-030(b) is unconstitutionally vague in that respect falls flat.

Although the word "whenever" is not defined anywhere in the Code, its ordinary meaning is certainly perceptible to a person of average intelligence (Discount Inn, 72 F.Supp.3d at 937). Webster's Third New Int'l Dictionary 2602 (1986) lists "whenever" as a conjunction and defines it as "at any or all times that: in any or every instance in which." Based on its common usage and that definition, the term "whenever" gives sufficient notice to Langendorf that he may be issued a ticket "at any and every time" that his car is parked without proper registration.

Importantly, Langendorf does not assert anywhere in the Complaint that he was innocent of the compliance violation at the time that any of the three tickets was issued during the September 1 and 2 time period that his car was parked on West Lill Avenue. Furthermore, the issuance times of the three tickets would appear to indicate that enforcement officers simply returned to the area periodically to check for ordinance violations. That course of events was reasonably foreseeable based on language in the Code provision, and as such Code § 100-030(b) is not unconstitutionally vague.

Lastly, Langendorf also contends that the City has exceeded its home rule authority because provisions of the Code are inconsistent with the Illinois Vehicle Code (P. Resp.

Mem. 14). But that state law claim need not be addressed at this time because it is not yet certain (1) whether Langendorf failed to state a federal claim or (2) whether in the event of such a failure the half-century-old (but still controlling) principle established by <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966) might call for leaving the state law issue for state court determination.

## **Conclusion**

For the reasons stated in this opinion, the City's motion to dismiss the Complaint (Dkt. No. 16) is denied. This action is set for a status hearing at 9:15 a.m. on February 13, 2017 to discuss further proceedings in the case.

_____
Milton I. Shadur
Senior United States District Judge

Date: February 6, 2017